THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANA DEWSBURY ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | No. 23 C 5273 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| ) | |
| BIMEDA INC. and BIMEDA ) | |
| BIOLOGICALS, INC., ) | |
| ) | |
|     *Defendants.* ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dr. Diana Dewsbury sued her former employer Bimeda Biologicals, Inc., and its parent company Bimeda Inc., alleging sex discrimination and retaliation. 42 U.S.C. §§ 1981, 2000e-2(a); (Dkt. 8). Bimeda Biologicals moves to transfer venue to the Northern District of Texas under 28 U.S.C. § 1404(a). (Dkt. 19). Bimeda Inc. does not object to Bimeda Biologicals' motion to transfer. (Dkt. 20 at 1; Dkt. 26 at 11). For the reasons below, Bimeda Biologicals' motion to transfer [19] is granted.

## BACKGROUND

Bimeda Biologicals is a Texas corporation, with a manufacturing facility in San Angelo, Texas. (Dkt. 8 ¶ 8; Dkt. 20 at 2). Bimeda Biologicals' Texas facility manufactures for Bimeda Inc., a Delaware corporation headquartered in Illinois. (Dkt. 8 ¶¶ 7–8; Dkt. 20 at 3). Dr. Dewsbury is a Caucasian woman residing in Johnson County, Texas. (Dkt. 8 ¶¶ 6, 13; Dkt. 20-1 at 7). On January 26, 2022, Dr. Dewsbury started working at Bimeda Biologicals' Texas facility as a Research and Development Scientist and Diagnostic Lab Supervisor. (Dkt. 8 ¶ 13). When Dr. Dewsbury began her role, Bimeda Inc. issued her several onboarding documents, including an offer letter and

1

employee handbook. (*Id.* at ¶ 14). Dr. Dewsbury did not work on behalf of Bimeda Inc. as an employee in Illinois, or receive pay in Illinois, at any time during her employment. (Dkt. 20 at 3).

First, Dr. Dewsbury alleges several Bimeda-affiliated individuals discriminated against her based on her sex. (Dkt. 8 ¶¶ 18–28). These individuals include Dale Weise, Jim Bob Harris—both Texas residents—and Dr. David Ellefson, a Virginia resident. (*Id.*; Dkt. 20-1 ¶¶ 7, 10; Dkt. 20-2 ¶ 8). In her amended complaint, Dr. Dewsbury alleges in part that these individuals condescended and belittled her, treated her more harshly than her male colleagues, told her she "won't be happy" unless she bears children, and took credit for her work. (Dkt. 8 ¶¶ 18–28).

Further, Dr. Dewsbury alleges she witnessed race discrimination at Bimeda Biologicals. (*Id.* at ¶ 29). Specifically, Dr. Dewsbury states she observed Weise "constantly" mistreat Pedro Ortega—a Hispanic male, Texas resident and Dr. Dewsbury's direct report—and treat him differently than non-Hispanic male co-workers (Dkt. 8 ¶¶ 30–36; Dkt. 20-1 ¶ 11). Dr. Dewsbury further alleges Weise referred to her Hispanic colleagues with "racist" names they did not have such as "Julio," "Juan," and "Jose." (*Id.* at ¶ 37). She also states she witnessed Harris use an offensive racial slur more than once at work. (*Id.* at ¶ 38). Dr. Dewsbury allegedly alerted Bimeda Biologicals General Manager Sidonna Hartman, a Texas resident, about the race discrimination, to no avail. (Dkt. 8 ¶¶ 40–41; Dkt. 20 at 6).

Dr. Dewsbury then brought her discrimination complaints to Bimeda Inc. Human Resources Director Timothy Carlson, a Kansas resident, but still "nothing was done to address the issue." (Dkt. 8 at ¶¶ 42–44). After her allegedly futile attempts, Brandy Widener, a Bimeda Biologicals supervisor and Texas resident, "accosted and threatened" Dr. Dewsbury in her office on October 4, 2022. (*Id.* at ¶ 45). Dr. Dewsbury complained to Hartman—who allegedly witnessed the confrontation—then Carlson. (*Id.* at ¶¶ 47–50). Bimeda Inc. Human Resources then

investigated the confrontation. (*Id.* at ¶ 50). The next day, Dr. Dewsbury alleges she was suspended with pay. (*Id.* at ¶ 51). Later that month, Carlson terminated Dr. Dewsbury after she refused a severance offer conditioned on a full release of claims and confidentiality. (*Id.* at ¶ 52).

On January 11, 2023, Dr. Dewsbury filed an Equal Employment Opportunity Commission ("EEOC") discrimination charge with the Texas Workforce Commission against Bimeda Inc. alleging sex discrimination and retaliation for race-based complaints. (*Id.* at ¶ 54; Dkt. 20-1 at 7–10). Dr. Dewsbury indicates she received the right to sue from the EEOC before filing this suit. (Dkt. 8 ¶ 55). On August 9, 2023, Dr. Dewsbury brought this action under Title VII of the Civil Rights Act of 1964 and § 1981 against Defendants alleging (1) sex discrimination, (2) retaliation for complaining of sex and race discrimination; and (3) retaliation for complaining of race discrimination. *See* 42 U.S.C. §§ 1981, 2000e-2(a); (*Id.* at ¶¶ 56–74). Bimeda Biologicals now moves under 28 U.S.C. § 1404(a) to transfer this case to the Northern District of Texas. (Dkt. 19). Bimeda Inc. does not object. (Dkt. 20 at 1; Dkt. 26 at 11).

## DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a); *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 707 (7th Cir. 2020). The Court may, in its discretion, transfer the case to another district if: "(1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice." *Hanover Ins. Co. v. N. Bldg. Co.*, 891 F. Supp. 2d 1019, 1025 (N.D. Ill. 2012); *see also Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977–78 (7th Cir. 2010).

The movant, here Bimeda Biologicals, bears the burden of showing "that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). "When deciding a motion to transfer venue, the court must accept as true all of plaintiff's well-pleaded facts in the complaint, unless contradicted by affidavits or other appropriate evidence from the defendant." *Crothall Laundry Servs., Inc. v. OSF Health Care Sys.*, 2018 WL 1695364, at *4 (N.D. Ill. 2018) (collecting cases) (quotation omitted); *Williams v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 4106067, at *7 (ND. Ill. 2023) (same).

Dr. Dewsbury and Bimeda Biologicals do not dispute that venue is proper in both the Northern District of Illinois and the Northern District Texas. (Dkt. 20 at 4; Dkt. 26 at 3). So, the Court turns to convenience and the interests of justice, which favor transfer.

### A.   Convenience

"In evaluating the convenience of the parties and witnesses, courts weigh the following factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 930 (N.D. Ill. 2017) (citation omitted); *accord Rsch. Automation, Inc.*, 626 F.3d at 978. These factors, taken together, weigh in favor of transfer.

### 1.   Plaintiff's Choice of Forum

A plaintiff's choice of forum generally deserves "substantial deference." *AL & PO Corp. v. Am. Healthcare Cap., Inc.*, 2015 WL 738694, at *2 (N.D. Ill. 2015); *see also In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947))); *Atl. Marine. Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,

571 U.S. 49, 63 (2013) (observing that "plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous"). Even so, certain considerations undermine Dr. Dewsbury's choice.

First, the deference owed to Dr. Dewsbury's choice "is substantially reduced because Plaintiff does not reside in this District." *Pryor v. United Air Lines, Inc*. 2013 WL 4506879, at *6 (N.D. Ill. 2013) (collecting cases); *C. Int'l, Inc. v. Turner Const. Co.*, 2005 WL 2171178, at *1 (N.D. Ill. 2005) ("Where the plaintiff does not reside in the chosen forum, the plaintiff's choice of forum is still accorded some weight, but not as much as otherwise."). Dr. Dewsbury does not reside in the Northern District of Illinois; she resides in Johnson County, Texas—located in the Northern District of Texas. *Id.*; *see also C. Int'l, Inc.*, 2005 WL 2171178, at *2 (acknowledging that when some of a case's operative facts related to Illinois, it allowed plaintiff's choice of forum to have significant weight, "but not as much as when the plaintiff is located in the forum as well").

For support, Dr. Dewsbury relies on *Carter v. Arise Virtual Solutions*, where the court found that "substantial deference" to a plaintiff's choice of forum trumped many of the factors favoring transfer. 2017 WL 192374, at *2 (N.D. Ill. 2017). *Carter*'s facts significantly differ from this case. In *Carter*, plaintiff brought a class action against his employer, alleging Fair Labor Standards Act and Illinois Minimum Wage Law violations. *Id.* at *1. In retaining plaintiff's choice of forum, the court considered that plaintiff represented a class that worked in Illinois for one of his claims and that plaintiff himself performed work at issue in Illinois. *Id.* at *2. Unlike *Carter*, Dr. Dewsbury brings claims under § 1981 and Title VII. (*See* Dkt. 25 ¶ 1). Further, Dr. Dewsbury performed no work relating to her claims in Illinois—nor does she represent a class of those who did. (*See* Dkt. 20-2 ¶¶ 5–6).

Finally, "a plaintiff's choice of forum is afforded less deference when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no connection to the material events." *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007) (citing *Chi., Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)). To be sure, the Northern District of Illinois has *some* connection to the material events. Bimeda, Inc. is headquartered in Illinois. From that fact, Dr. Dewsbury contends that Bimeda Inc. decided to hire her, investigated several of her protected complaints, maintained some of her employment documents, and "ultimately" decided to terminate her in the Northern District of Illinois. Even so, as discussed *infra* p. 6–7, the Northern District of Texas has a stronger relationship to the dispute. The Court can only stretch its "substantial deference" so far.

In sum, Dr. Dewsbury resides in Texas and has cited no binding authority persuading the Court the deference she is accorded under the law is quite so strong. Accordingly, this factor weighs against transfer.

2.  **Situs of Material Events**

"The situs of material events [generally] depends both on the conduct of the defendants and on those who feel the effects of the conduct." *Bland v. Edward D. Jones & Co., L.P.*, 2020 WL 702795, at *8 (N.D. Ill. 2020) (quoting *Perry v. Cable News Network, Inc.*, 2014 WL 4214873, at *2 (N.D. Ill. 2014)). Courts also "recognize that the location where a company devises its policies and procedures is a relevant situs of material events." *Bland*, 2020 WL 702795, at *8 (citing *AL & PO Corp.*, 2015 WL 738694, at *3); *Lafleur v. Dollar Tree Stores, Inc.*, 2012 WL 2280090, at *4 (N.D. Ill. 2012). Here, the Court finds that Texas "is a more substantial situs of material events," than Illinois. *Williams v. Am. Coll. of Educ., Inc.*, 2017 WL 24242227, at *6 (N.D. Ill. 2017).

6

Dr. Dewsbury alleges the discriminatory acts took place in the Northern District of Texas. She contends, however, that Bimeda Inc.'s alleged retaliatory acts took place in Illinois, and that Bimeda Inc. maintained her employment agreement, employee manual, and health insurance information in Illinois. Yet, Bimeda Inc. disputes these allegations. (*See* Dkt. 20 at 5; Dkt. 25 at 5; Dkt. 26 at 2). Bimeda Inc.'s declarations of Bimeda Biologicals' Director Paul Brady and Senior Vice President of Operations Brian Vincent state that (1) the relevant documents (excluding her personnel file and email correspondence) are located in Texas with Dr. Dewsbury and Bimeda Biologicals; and (2) Carlson—who Dr. Dewsbury alleged received and investigated Dr. Dewsbury's complaints, gave the severance offer, and terminated her—lives in Kansas. (Dkt. 20-1 ¶14–15; Dkt. 20-2 ¶¶ 6–7). Just because employees who worked for Bimeda Inc., which is headquartered in Illinois, were involved in Dr. Dewsbury's investigation and termination, does not rebut the declarations put forth by Bimeda Inc.

At this stage, the findings before the Court counter Dr. Dewsbury's allegations that the investigation, decision, and documents occurred or reside in this district. *See Crothall Laundry Servs*, 2018 WL 1695364, at *4 ("[w]hen deciding a motion to transfer venue, the court must accept as true all of plaintiff's well-pleaded facts in the complaint, unless contradicted by affidavits or other appropriate evidence from the defendant."). Further, neither party addressed the contention that Defendants devised their policies or procedures in Illinois or where Bimeda Inc. decided to terminate Dr. Dewsbury. Though these issues remain inconclusive, the Court does not find they outweigh the evidence presented, especially since the decision's location is not particularly relevant to the situs of material facts in the Title VII context. *See Johnson v. United Airlines, Inc.*, 2013 WL 323404, at *5 (N.D. Ill. 2013).

More importantly, "a key situs of material events" for Title VII and § 1981 actions are "the location where the employee suffered from the unlawful employment practice." *Bland*, 2020 WL 702795, at *8 (citing *Williams*, 2017 WL 2424227, at *6) (quotations omitted); *see also Johnson*, 2013 WL 323404, at *5 (collecting cases) ("[T]he most significant situs generally is the place where the relevant decision's effects were felt."). Dr. Dewsbury worked and resided in the Northern District of Texas when the alleged unlawful employment practices occurred. She experienced sex discrimination and faced unlawful retaliation while living and working in the Northern District of Texas. These considerations make Texas, not Illinois, a key situs of material events. In turn, this district's connection to the material events alleged is quite weak. Accordingly, this factor favors transfer.

### 3.     Convenience of the Witnesses

Next, the convenience of witnesses favors transfer. The convenience of witnesses is often "the most important factor in the transfer analysis." *Bland*, 2020 WL 702795, at *10. The moving party seeking transfer based on convenience of witnesses "must clearly specify the key witnesses to be called and include a generalized statement about what their testimony will include." *Crothall Laundry Servs.*, 2018 WL 1695364, at *8 (citing *St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.*, 2006 WL 1543275, at *4 (N.D. Ill. 2006)).

Here, Bimeda Biologicals identifies six key party witnesses: Dr. Dewsbury, Dale Weise, Sidonna Hartman, Brandy Widener, David Ellefson, and Tim Carlson. Bimeda Biologicals explains these key witnesses can testify regarding alleged events that led or related to Dr. Dewsbury's discrimination and retaliation claims. Further, these key witnesses can testify about Bimeda Biologicals' affirmative defenses. All party witnesses are Defendants' employees. All but two party witnesses reside in Texas, four of which reside in the Northern District of Texas. Tim

Carlson and David Ellefson reside in Kansas and Virginia, respectively. Notably, no party witnesses reside in Illinois.

Courts consider convenience of non-party witnesses more heavily than party witnesses and their employees, "since party witnesses normally must appear voluntarily as part of their employment." *Rosen v. Spirit Airlines, Inc.,* 152 F. Supp. 3d 1055, 1061 (N.D. Ill. 2015). Bimeda Biologicals identifies two key non-party witnesses: Pedro Ortega and Jim Bob Harris. Dr. Dewsbury allegedly witnessed race discrimination against Ortega and witnessed Harris utter a racial slur multiple times at work. Harris also allegedly discriminated against Dr. Dewsbury based on her sex. Ortega, a former Bimeda Biologicals employee, resides in the Western District of Texas. Jim Bob Harris, a Bimeda Biologicals consultant, also resides in Texas. Again, no identified non-party witnesses reside in Illinois.

Dr. Dewsbury's arguments for transfer fail to tip the balance in her favor. First, Dr. Dewsbury speculates there are further key witnesses in Illinois that the parties have not yet produced. (Dkt. 25 at 6). Specifically, she argues that since Bimeda Inc. will have to designate a corporate representative and produce decision-makers in her severance and termination, that these individuals reside and work in Illinois. Yet, "[v]ague generalizations concerning potential witnesses are insufficient" when considering a motion transfer under this factor. *Williams*, 2017 WL 2424227, at *7 (citing *St. Paul Fire*, WL 1543275, at *4).

Second, Dr. Dewsbury contends this factor should remain neutral because the parties can depose all identified, out-of-state witnesses remotely. Though the argument that depositions can be conducted remotely cuts both ways, the Court ultimately finds it favors transfer. "[T]here are sound reasons why most clients, lawyer, and judges still favor in-person trial testimony over remote testimony, especially for jury trials." *Waters v. Leidos*, 2022 WL 657055, at *3 (N.D. Ill

2022); *see also Perotti v. Quinones*, 790 F.3d 712, 721–75, 729 (7th Cir. 2015) (noting video appearance has not "come to be seen as the equivalent of in-person appearance"). In fact, this Court conducts all hearings in person and requires approval for virtual appearances. While it is unlikely any witness would have to travel to this district other than for trial, "the mere possibility of continued remote depositions and hearings is too speculative to tip the balance of this inquiry" in Dr. Dewsbury's favor. *Knight v. Baxter Healthcare Corp.*, 2020 WL 6287404, at *3 (N.D. Ill. 2020); *accord Obento Unlimited v. qMenu Inc.*, 2021 WL 4264374, at *4 (N.D. Ill. Sept. 20, 2021).

Ultimately, all identified key non-party witnesses reside in Texas; all but two identified key party witnesses reside in Texas; and no identified witnesses reside in Illinois. Dr. Dewsbury's arguments fail to overcome the inconvenience to both party and non-party witnesses. Accordingly, this factor favors transfer.

    **4. Convenience of the Parties**

For similar reasons, the convenience of the parties favors transfer. When analyzing parties' convenience, "courts assess the parties' respective residences and abilities to bear the expense of trial in a particular forum.'" *Crothall Laundry Servs.*, 2018 WL 1695364, at *7 (cleaned up). Two out of three parties, including Bimeda Biologicals and Dr. Dewsbury herself, reside in the Northern District of Texas. *Knight*, 2020 WL 6287404, at *3 (finding both parties residing in the alternative venue, "buttressed by the comparatively greater number of documents and witnesses" there, favored transfer). Although this district would be more convenient for Bimeda Inc., as a corporate entity the Court assumes it is "equally able to bear litigation costs" in the Northern District of Texas. *Crothall Laundry Servs.*, 2018 WL 1695364, at *7.

Dr. Dewsbury, a Northern District of Texas resident, argues that litigating in the Northern District of Texas would "greatly inconvenience[]" her compared to litigating in the Northern

District of Illinois. (Dkt. 25 at 9). Specifically, she contends that a two-hour direct flight from major Fort Worth, Texas airports to Chicago, Illinois is "significantly more convenient and safer" than a four-hour drive from her residence to the Northern District of Texas "via country roads." (*Id.*) While Dr. Dewsbury did not provide any information on her financial situation, it beggars belief that a $300–600 flight (according to the Court's research and not including hotel and other expenses) is "more convenient" than driving to court in her home district.

Even accepting her borderline outlandish argument, having Bimeda Biologicals and all identified key party or non-party witnesses travel to this district—when all but two employee witnesses reside in Texas—creates more than a mere shift in inconvenience. *Compare Rsch. Automation*, 626 F.3d at 978 ("where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer") *with Johnson*, 2013 WL 323404, at *6 (finding the alternative venue in a motion to transfer of an employment discrimination case "far more convenient to [defendant], given that most of the individual identified in the complaint work[ed] out of" the alternative venue's state) (collecting cases). Accordingly, this factor, and the convenience factors overall, favor transfer.

**B.    Interests of Justice**

Lastly, the interests of justice further weigh in favor of transfer. The Court considers (1) the relationship of the community to the controversy and respective desirability of resolving controversies in each locale; (2) each court's familiarity with applicable law; and (3) the congestion of the respective dockets and prospects of earlier trial. *Rsch Automation*, 626 F.3d at 978. The second factor is neutral, since both districts are equally familiar with the federal law at issue. *See, e.g., Bland*, 2020 WL 702795, at *11 (finding the factor regarding familiarity with applicable law neutral, "[b]ecause plaintiffs' Title VII and § 1981 claims are federal claims, both districts are

equally familiar with the applicable law"); *Waters*, 2022 WL 657055, at *4; *Pryor*, 2013 WL 4506879, at *8. The Court will therefore consider the first and third factors.

### 1. Relationship of the Community to Controversy & Respective Desirability of Resolving Controversies in Each Locale

Bimeda Biologicals contends that the Northern District of Texas has a closer relationship to this case because it believes Texas is the situs of the material events. As discussed, the Court finds Texas "is a more substantial situs of the material events" compared to Illinois. *See supra* A(2). This case has some, albeit weaker, ties to the Northern District of Illinois. *See id.*

Nevertheless, "the administration of justice is better served when the action is litigated in the forum that is closer to the action." *Knight*, 2020 WL 6287404, at *5 (cleaned up). As discussed, a key situs of material events for Title VII and § 1981 actions are "the location where the employee suffered from the unlawful employment practice." *Bland*, 2020 WL 702795, at *8 (citing *Williams*, 2017 WL 2424227, at *6); *see also Johnson*, 2013 WL 323404, at *5 (collecting cases) ("[T]he most significant situs generally is the place where the relevant decision's effects were felt."). Dr. Dewsbury and Bimeda Biologicals reside in the Northern District of Texas. Based on the complaint, it is fair to presume that Dr. Dewsbury felt the effects of the alleged discrimination and retaliation where she lived and work in the Northern District of Texas. All but two identified key witnesses involved in this case reside in Texas. In sum, "[t]he balance of the controversy points to a greater connection" to the Northern District of Texas. *Crothall Laundry Servs.*, 2018 WL 1695364, at *10. In turn, it is less desirable to resolve this controversy in the Northern District of Illinois when compared to the Northern District of Texas.

### 2. Congestion of Respective Dockets and Prospects of Earlier Trial

Courts evaluate each venue's docket congestion and prospects of earlier trial by referring to statistics from the United States District Courts National Judicial Caseload Profiles. *Bland*, 2020

WL 702795, at *11. Specifically, courts consider two statistics: "(1) the median number of months from filing to disposition for civil cases and (2) the median number of months from filing to trial for civil cases." *Id.* Courts have also considered the number of weighted filings in each district. *See Boyd v. Snyder*, 44 F. Supp. 2d 966, 974 (N.D. Ill. 1999); *Zalutsky, Pinski & DiGiacomo, Ltd. v. Kleinman*, 747 F. Supp. 457, 463 (N.D. Ill. 1990).

The most recent statistics show a modest 0.5-month difference in median filing to disposition time between the two venues—with the Northern District of Illinois at 6 months, and the Northern District of Texas at 6.5 months. *See* United States District Courts — National Judicial Caseload Profile, September 2023, *available at* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf. However, the same statistics show a considerable 31-month difference in median filing to trial time—with the Northern District of Illinois at 57.7 months, and the Northern District of Texas at 26.7 months. *Id.* This district also has 140 more weighted filings then the Northern District of Texas. *Id.* Thus, this factor, and interests of justice weigh in favor of transfer.

## CONCLUSION

For the reasons above, the Court grants Bimeda Biologicals' motion to transfer venue [19] and directs the Clerk to transfer the case to the Northern District of Texas forthwith pursuant to 28 U.S.C. § 1404(a) for all further proceedings.

_____
Virginia M. Kendall
United States District Judge

Date: March 25, 2024

13